JKMcD:MCC: USAO#2017R00770

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE
BY_____/_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**KEVIN B. MERRILL,**<br>**JAY B. LEDFORD,**<br>**CAMERON R. JEZIERSKI,**<br>Defendants. | **CRIMINAL NO.** RDB-18-0465<br>**(Conspiracy to Commit Wire Fraud**<br>**(18 U.S.C. §1349); Wire Fraud (18**<br>**U.S.C. § 1343); Identity Theft (18**<br>**U.S.C. § 1028A); Money-Laundering**<br>**Conspiracy (18 U.S.C. § 1956(h));**<br>**Financial Transactions Over $10,000**<br>**in Criminally Derived Property (18**<br>**U.S.C. § 1957(a); Forfeiture).**<br><br>**UNDER SEAL** |

## INDICTMENT

### Conspiracy to Commit Wire Fraud

The Grand Jury for the District of Maryland charges:

### COUNT ONE

1.    At all times material to this Indictment, **KEVIN B. MERRILL ("MERRILL")**
lived in Maryland.

2.    At all times material to this Indictment, **JAY B. LEDFORD ("LEDFORD")**
lived in Texas and Nevada and operated, among other companies, Riverwalk Financial
Corporation at Riverwalk Financial HQ, 1132 Glade Road Colleyville, Texas 76034, and
Ledford and Associates, PLLC, an accounting firm, at 2801 Paramount Boulevard, Amarillo,
Texas 79109.

3.    At times material to this Indictment, **CAMERON R. JEZIERSKI**
**("JEZIERSKI")** lived in Texas.

4.   At times material to this Indictment, **MERRILL** controlled, among others, bank accounts at the following financial institutions:

| Account Name | Bank | Last 4 Digits of Account Number |
|---|---|---|
| Delmarva Capital | Wells Fargo | ***3493 |
| Global Credit Recovery, LLC | PNC Bank | ***4768 |
| Global Credit Recovery, LLC (General Trust) | PNC Bank | ***4776 |
| Global Credit Recovery, LLC | BB&T | ***0636 |
| Global Credit Recovery, LLC | Wells Fargo | ***7823 |
| Global Credit Recovery, LLC | Eagle Bank | ***8673 |
| Global Mercer Holdings LLC | PNC Bank | ***5449 |
| K. B. Merrill Associates LLC | Wells Fargo | ***8356 |
| Rhino Capital Holdings LLC | PNC Bank | ***2822 |

5.   At times material to this Indictment, **LEDFORD** controlled, among others, bank accounts at the following financial institutions:

| Account Name | Bank | Last 4 Digits of Account Number |
|---|---|---|
| De Ville Asset Management Limited | Bank of America | ***2485 & ***2472 |
| De Ville Asset Management Limited | Bank of the West | ***6495 |
| De Ville Asset Management Limited | BB&T | ***8410 |
| De Ville Asset Management Limited | Citibank | ***4664 |
| De Ville Asset Management Limited | JPMorgan Chase | ***8063 |
| Receivables Portfolio Interchange Inc. | Bank of America | ***2401 |
| Riverwalk Debt Solutions, Inc. | BB&T | ***0371 |
| Riverwalk Debt Solutions, Inc. | Citibank | ***5324 |
| Riverwalk Financial Corporation | Bank of America | ***8932 & ***8958 |
| JBL Holdings LLC | Bank of America | ***2414 |
| JBL Holdings LLC | BB&T | ***0401 |
| JBL Holdings LLC | Citibank | ***5340 |
| JBL Holdings LLC | JPMC | ***0482 |

6.     At all times material to this Indictment, consumers in the United States had outstanding debts to consumer lenders, including to credit card issuers, such as banks, to car and truck finance companies, to retail companies, and to student loan lenders. From time to time, consumer lenders sold to third parties, either directly or through brokers, portfolios of consumer debt ("consumer debt portfolios"); the consumer debt portfolios were typically identified by the total number of consumer accounts, the face value of the total indebtedness, and the consumer lender.

## THE SCHEME TO DEFRAUD

7.     From in and around January 2013 and continuing until the present, in the District of Maryland and elsewhere, the defendants,

**KEVIN B. MERRILL**
**JAY B. LEDFORD,**
**CAMERON R. JEZIERSKI,**

and others known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud investors in consumer debt portfolios of more than $364 million and to obtain money and property in excess of $364 million from investors in consumer debt portfolios by means of materially false and fraudulent pretenses, representations and promises ("the scheme to defraud"), in that **MERRILL, LEDFORD** and **JEZIERSKI:**

a.     purported to invest in consumer debt portfolios and offer to potential investors opportunities to invest with them, when in fact, **MERRILL, LEDFORD** and **JEZIERSKI** in emails, by telephone, and in promotional materials falsified the actual seller of the consumer debt portfolio, the actual purchase price of the consumer debt portfolio from the seller, the nature and fact of **MERRILL** and/or **LEDFORD**'s participation in the transaction, and at times created fictitious transactions;

b.     purported to sell or "flip" the consumer debt portfolios to independent, third party

3

buyers for a profit, when in fact there were no sales to independent third party buyers;

      c.      purported to "collect" consumer debt payments on the portfolios, when in fact, **MERRILL, LEDFORD** and **JEZIERSKI** inflated or invented the collection reports they provided to investors;

      d.      purported to pay profits to investors from successful "flips" or collections from consumer payments on the debt portfolios, when in fact, **MERRILL, LEDFORD** and **JEZIERSKI** used money from investors to pay purported profits and/or collections to investors, including using re-investments from investors to fund payments to them of their purported profits and/or collections; and

      e.      purported to provide third party documentation to the investors of their actions, when in fact **MERRILL, LEDFORD** and **JEZIERSKI** created imposter companies and their bank accounts, shell companies and their bank accounts, falsified bank wire transfer records and bank statements, created false consumer debt portfolio overviews and sales agreements, and created false collection reports; and undertook all these fraudulent actions while **MERRILL, LEDFORD** and **JEZIERSKI** personally enriched themselves and concealed their diversion of over $73 million of investors' monies to purchase luxury automobiles, purchase and/or renovate high end houses in Maryland, Texas, Nevada, and Florida, buy a boat, watches, jewelry, and collectibles, acquire a share in a jet plane, gamble at casinos, and support a lavish lifestyle.

## THE CONSPIRACY CHARGE

      8.      From in and around January 2013 through the present, in the District of Maryland and elsewhere, the defendants

**KEVIN B. MERRILL**
**JAY B. LEDFORD, and**
**CAMERON R. JEZIERSKI**

did knowingly and willfully conspire, combine, confederate, and agree with each other and with

other persons known and unknown to the Grand Jury, to commit wire fraud, that is to knowingly

execute and attempt to execute the scheme to defraud through the use of interstate wires in

violation of Title 18, United States Code, Section 1343.

## THE PURPOSE OF THE CONSPIRACY AND SCHEME TO DEFRAUD

9.     The purpose of the conspiracy and scheme to defraud was for **MERRILL,**

**LEDFORD,** and **JEZIERSKI**, the co-schemers and co-conspirators, to persuade, and attempt to

persuade, investors to use interstate wire transfers to send in excess of $364 million to bank

accounts controlled by **MERRILL, LEDFORD** and **JEZIERSKI** for the purpose of investing

in consumer debt portfolios and purported consumer debt portfolios so that **MERRILL,**

**LEDFORD** and **JEZIERSKI** could use the invested monies to fund purported collection

payments or purported proceeds from "flips" to entice continued investor participation and

recruitment of new investors all while **MERRILL, LEDFORD** and **JEZIERSKI** instead used

those monies to pay expenses of the scheme to defraud and diverted monies for their personal

benefit.

## MANNER AND MEANS OF THE CONSPIRACY and SCHEME TO DEFRAUD

10.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and

**LEDFORD** represented to investors and potential investors that **MERRILL** and **LEDFORD**

were investing their funds in consumer debt portfolios, to be purchased directly from consumer

lenders, and invited the investors and potential investors to invest funds alongside **MERRILL**

and **LEDFORD**'s funds, when in fact, **MERRILL and LEDFORD** often made no investment in

the portfolios or faked their investment in the portfolios.

5

11.     It was a part of the conspiracy and scheme to defraud that **LEDFORD** incorporated and controlled Receivables Portfolio Interchange, Inc., which **MERRILL** and **LEDFORD** held out to investors and prospective investors as an unaffiliated third-party seller of consumer debt portfolios.

12.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** represented to investors and potential investors a purported purchase price for consumer debt portfolio purchases which was either an inflated price or a made up price for a fictitious transaction.

13.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** falsified the purchase prices on consumer debt portfolio purchase agreements between their companies and consumer lenders and furnished the falsified documents to investors and potential investors as though the agreements were genuine.

14.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** at times created a fictitious asset purchase agreement between a company they controlled and an actual consumer lender and invited investors and potential investors to invest in a non-existent transaction.

15.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** used the identity of an officer or employee of a consumer lender on the fictitious asset purchase agreement and forged the bank officer/employee's signature on the agreement to lend credibility to the false document and the fraudulent transaction.

16.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** falsely represented to investors and potential investors that often within 90 days, consumer debt portfolios purchased by investors would be, and were, "flipped" or sold to new, third party buyers for a profit.

6

17.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** used the interstate banking system to wire transfer funds to investors which they falsely represented to be the profits from their sales of the investors' portfolios to new, third party buyers; in fact, **MERRILL** and **LEDFORD** funded the wire transfers through new investors' monies or by persuading old investors to re-invest.

18.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** used the interstate banking system to wire transfer funds to investors which they falsely represented to be the results of collections on the investors' portfolios; in fact, **MERRILL** and **LEDFORD** funded the wire transfers through new investors' monies, by persuading old investors to re-invest, and through collections which were far smaller than **MERRILL** and **LEDFORD** represented.

19.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** communicated with each other and with investors and potential investors through interstate wire communications including email, text messages, and telephone calls.

20.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** operated, and **JEZIERSKI** managed, collections centers at 1601 West Airport Freeway, Euless, Texas and 9151 Boulevard 26, North Richland Hills, Texas, to collect on some of the consumer debt portfolios they acquired; **MERRILL, LEDFORD** and **JEZIERSKI** toured the collections centers with investors and potential investors to lend credibility to their operations; in fact, **MERRILL** and **LEDFORD** used any funds received from collections to fund the cash needs of the scheme to defraud, and **MERRILL, LEDFORD** and **JEZIERSKI** routinely inflated or invented collection reports.

21.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** caused **JEZIERSKI** to incorporate two companies in Texas, namely SCUSA

7

Financial, Inc., and NLEX, Inc., which companies were used as imposters for the consumer lender Santander Consumer USA, Inc., which uses the acronym "SCUSA," and the consumer debt portfolio broker, National Loan Exchange Inc., which uses the acronym "NLEX."

22.     It was a part of the conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** caused **JEZIERSKI** to open a bank account at JP Morgan Chase, Richland Hills, Texas, ending in \*\*\*9592, in the name of the imposter company, SCUSA Financial, and a bank account ending in \*\*\*8330 at JP Morgan Chase, North Richland Hills, Texas, in the name of the imposter company, NLEX, so that when **LEDFORD** and **MERRILL** directed investors to send funds to the imposter bank accounts, the wiring instructions fostered a belief in the investors that their funds had purchased consumer debt portfolios directly from a true lender or broker, but **LEDFORD, MERRILL** and **JEZIERSKI** in fact controlled the funds.

23.     It was a part of the conspiracy and scheme to defraud that **JEZIERSKI**, at the direction of **MERRILL** and **LEDFORD**, immediately transferred investors' funds from the bank accounts of the imposter companies to bank accounts controlled by **MERRILL** and **LEDFORD**.

24.     It was a part of conspiracy and scheme to defraud that **MERRILL** and **LEDFORD** diverted investors' funds to their personal benefit to fund lavish lifestyles and the purchase of

a.     over 20 high end automobiles;

b.     at least nine (9) real estate purchases and/or renovations, including

1. 1848 Circle Road, Towson, MD 21204;

2. 1055 Spyglass Lane, Naples, FL 34102;

3. 27776 Sharp Road, Easton, MD 21601;

4. 531 Hampton Lane, Towson, MD 21204;

5. 3018 Susanne Court, Owings Mills, MD 21117;

8

       6. 1718 Greenspring Valley Road, Stevenson, MD 21153;

       7. 9017 Grove Crest Lane, Las Vegas, NV 89134;

       8. 1132 Glade Road, Colleyville, TX 76034; and

       9. 1650 Cedar Hill Dallas, TX 75208

c.     over $8.3 million in watches, jewelry, and collectibles; and

d.     over $25 million in casino gambling.

18 U.S.C. §1349

## COUNT TWO

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2. On or about December 6, 2017, **MERRILL** emailed the representative of a prospective investor group ("Investor Group #1") and falsely represented that Global Credit Recovery was awarded the bid by Santander to purchase a $316 million Santander debt file for $15.8 million, more or less. GCR Mercer Holdings LLC, which was controlled by **MERRILL,** was to take title to the Santander file; closing was represented to occur on December 27, 2017.

3. On or about December 25, 2017, **LEDFORD** emailed a Riverwalk Financial Corporation employee with instructions to create a debt portfolio with 33,881 accounts and a principal value of $315,917,096.04 from four portfolios that DeVille Asset Management Limited had acquired or would acquire from Santander.

4. On or about December 26, 2017, **MERRILL** emailed Investor Group #1 a link to a purported Purchase Sales Agreement (PSA) between Santander and GCR Mercer Holdings, LLC.

5. On or about December 27, 2017, **LEDFORD** emailed **MERRILL** the signature page from the purported Purchase Sales Agreement between Santander and GCR Mercer Holdings, LLC, which bore the forged signature of an actual Santander employee S.B.

6. On or about December 27, 2017, **MERRILL** signed the fraudulent Purchase Sales Agreement that contained the forged signature of S.B. and emailed it back to **LEDFORD**.

7. Investor Group #1 agreed to fund 90 % of the purported acquisition of the $316 million debt file from Santander, namely $14,216,269.32, while **MERRILL** falsely claimed that

he would fund the remaining 10% of the transaction or $1,579,585.48, through Delmarva Capital.

8.     On or about April 23, 2018, **LEDFORD** sent an email to **MERRILL** and to an investor representative for Investor Group #1 which attached multiple Portfolio Sales Agreements including the fraudulently created $316 million Santander debt portfolio purchase but with the forged signature redacted.

## THE CHARGE

9.     On or about December 28, 2017, in the District of Maryland, the defendants,

### KEVIN B. MERRILL
### JAY B. LEDFORD and
### CAMERON R. JEZIERSKI,

for the purpose of executing the scheme and artifice to defraud, caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer of investor funds totaling $14,216,269.32 from Investor Group #1's account at Texas Capital Bank, N.A., Dallas, Texas, to **MERRILL**'s Global Mercer Holdings, LLC's account ending in ***5449 at PNC Bank, Towson, Maryland.

18 U.S.C. § 1343

11

## COUNT THREE

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1.      The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.      The allegations of Count Two, Paragraphs 1-8 are incorporated by reference.

3.      On or about December 28, 2017, in the District of Maryland, the defendants,

**KEVIN B. MERRILL**
**JAY B. LEDFORD, and**
**CAMERON R. JEZIERSKI**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer of $15,795,854.80 from **MERRILL's** Global Mercer Holdings LLC's bank account ending in ***5449 at PNC Bank, Towson, Maryland to **JEZIERSKI's** imposter SCUSA Financial, Inc., bank account ending in ***9592 at JPMorgan Chase, North Richland Hills, Texas, which wire transfer included $14,216,269.32 from Investor Group #1 and what purported to be **MERRILL's** 10% share of the investment, that is, $1,579,585.48.


18 U.S.C. § 1343

## COUNT FOUR

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1.    The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.    The allegations of Count Two, Paragraphs 1-8 are incorporated by reference.

3.    On or about December 29, 2017, in the District of Maryland, the defendants,

### KEVIN B. MERRILL and
### JAY B. LEDFORD

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer of $1,579,585.48 from **LEDFORD**'s De Ville Asset Management Limited account ending in ***2485 at Bank of America, Colleyville, Texas, to **MERRILL**'s Delmarva Capital account at Wells Fargo Bank ending in ***3493 in Lutherville, Maryland, for the purpose of returning **MERRILL**'s "show money"-- that is, **MERRILL**'s purported 10% investment in the Santander $316 million portfolio.

18 U.S.C. § 1343

13

## COUNT FIVE

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1.     The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.     The allegations of Count Two, Paragraphs 1-8 are incorporated by reference.

3.     On or about December 29, 2017, in the District of Maryland, the defendants,

**KEVIN B. MERRILL** and
**JAY B. LEDFORD**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer of $612,133.46, which was funded by the investor funds described in Count Two, from **LEDFORD**'s De Ville Asset Management Limited account ending in ***2485 at Bank of America in Colleyville, Texas, to **MERRILL**'s Global Credit Recovery, LLC's account ending in ***8673 at Eagle Bank, Bethesda, Maryland.

18 U.S.C. § 1343

## COUNT SIX

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1.      The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.      In and around December 2017, **LEDFORD** and **JEZIERSKI** acquired a $33 million in face value consumer debt portfolio of BBVA Compass Bank through National Loan Exchange, Inc. for $1.69 million.

3.      On or about January 5, 2018, **LEDFORD** emailed **MERRILL,** who forwarded the email to the representative of Investor Group #1; the email and its attachments falsely represented that the $33 million BBVA Compass Bank consumer debt portfolio was being offered for the purchase price of $2.7 million and that closing was scheduled for January 18, 2018.

4.      On or about January 11, 2018, **LEDFORD** emailed **MERRILL,** who forwarded the email to the representative of Investor Group #1, a document which purported to be a draft Purchase Sales Agreement between BBVA Compass Bank and GCR Mercer Holdings LLC.

5.      On or about January 23, 2018, **LEDFORD** emailed **MERRILL** a "BBVA PSA ready for GCR signature." The attachment to the email was a Purchase Sales Agreement, which used the inflated purchase price of $2.7 million and contained the forged signature of BBVA Compass Bank officer and employee, P.G.

6.      On or about January 26, 2018, **MERRILL** emailed a representative of Investor Group #1 "New deal executed PSAs" for the $33 million BBVA Compass Bank consumer debt portfolio with an attachment titled "2018_01_24_13_50_12.pdf," which again used the false purchase price of $2.7 million and the forged signature of BBVA Compass Bank officer and

15

employee P.G, as well as **MERRILL**'s signature as a representative of GCR Mercer Holdings, LLC.

7.      In and around January 2018, **MERRILL** emailed a representative of Investor Group #1 an Asset Purchase Overview for a $91 million Alta student loan debt file which was available for $8,002,809.79 and was being "purchased directly from the original issuers." In fact, **LEDFORD** and **JEZIERSKI** had created the $91 million Alta student loan debt file from previously purchased debt portfolios and added the forged signature of Alta College's officer and employee, N.B.

8.      **MERRILL** falsely represented to Investor Group #1 that through Rhino Capital, **MERRILL** intended to supply 10% of the funds to purchase both the $33 million BBVA Compass Bank portfolio and the $91 million Alta student loan debt portfolio.

9.      Investor Group #1 agreed to fund a portion of the purported acquisition of both the $33 million BBVA Compass Bank and the $91 million Alta student loan debt portfolios.

## THE CHARGE

10.     On or about January 24, 2018, in the District of Maryland, the defendants,

**KEVIN B. MERRILL**
**JAY B. LEDFORD, and**
**CAMERON R. JEZIERSKI**

for the purpose of executing the scheme and artifice to defraud, caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer of investor funds in the amount of $9,644,552.00 from Investor Group #1's account at UBS Financial Services, Jersey City, New Jersey, to **MERRILL**'s GCR Mercer Holdings LLC's account ending in ***5449 at PNC Bank, Towson, Maryland.

18 U.S.C. § 1343

16

## COUNT SEVEN

### Wire Fraud

*The* Grand Jury for the District of Maryland further charges:

1.     The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.     The allegations of Count Six, Paragraphs 1-9 are incorporated by reference.

3.     On or about January 25, 2018, in the District of Maryland, the defendants,

**KEVIN B. MERRILL**
**JAY B. LEDFORD, and**
**CAMERON R. JEZIERSKI**

for the purpose of executing the scheme and artifice to defraud, caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer from **MERRILL**'s GCR Mercer Holdings LLC's account ***5449 at PNC Bank, Towson, Maryland of investor funds in the amount of $8,002,809.79 to **JEZIERSKI**'s imposter NLEX, Inc. account ending in ***8330 at JPMorgan Chase Bank, North Richland Hills, Texas.

18 U.S.C. § 1343

## COUNT EIGHT

### Wire Fraud

The Grand Jury for the District of Maryland further charges:

1.     The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2.     The allegations of Count Six, Paragraphs 1 - 9 are incorporated by reference.

3.     On or about January 25, 2018, in the District of Maryland, the defendants,

**KEVIN B. MERRILL**
**JAY B. LEDFORD, and**
**CAMERON R. JEZIERSKI,**

for the purpose of executing the scheme and artifice to defraud, caused to be transmitted in interstate commerce, writings, signs and symbols, namely a wire transfer from **MERRILL**'s GCR Mercer Holdings LLC's account ending in ***5449 at PNC Bank, Towson, Maryland of investor funds in the amount of $2,713,358.74 to **JEZIERSKI**'s imposter NLEX, Inc., account ending in ***8330 at JPMorgan Chase Bank, North Richland Hills, Texas.

18 U.S.C. § 1343

## COUNT NINE

### Identity Theft

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-24 are incorporated by reference.

2. The allegations of Count Six, Paragraphs 1-9 are incorporated by reference.

3. On or about December 27, 2017, in the District of Maryland and elsewhere, the defendants,

**KEVIN B. MERRILL and**
**JAY B. LEDFORD**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, **MERRILL** and **LEDFORD** transferred, possessed, and used the name and signature of an employee and official of Alta College, namely N.B., and the name and signature of an employee and official of BBVA Compass Bank, namely P.G., which is personal identifying information, during and in relation to Wire Fraud, 18 U.S.C. § 1343, as alleged in Count Six of this Indictment.

18 U.S.C. § 1028A(a)(1), (c)(4); 18 U.S.C. § 2

19

## COUNT TEN

### Money Laundering Conspiracy

The Grand Jury for the District of Maryland further charges:

1. From in and around January 2013 through the present, in the District of Maryland and elsewhere, the defendants

### KEVIN B. MERRILL and
### JAY B. LEDFORD

did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, that is:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud as described in Counts One - Eight, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud as described in Counts One - Eight, in violation of Title 18, United States Code, Section 1957.

20

## MANNER AND MEANS OF THE MONEY LAUNDERING CONSPIRACY

2. It was a part of the money laundering conspiracy for **MERRILL** and **LEDFORD** to conceal the proceeds from the wire fraud offenses through a purchase of real property.

3. It was a part of the money laundering conspiracy for **LEDFORD** to manage the cash flow of the wire fraud offenses.

4. It was a part of the money laundering conspiracy that when **MERRILL** decided to acquire the property located at 1055 Spyglass Lane, Naples, Florida 34102, for an approximate purchase price of $10.5 million, **LEDFORD** acted as **MERRILL**'s accountant in preparing and explaining financial statements for **MERRILL**'s businesses to the prospective mortgage lender.

5. It was a part of the money laundering conspiracy for **LEDFORD** to transfer in interstate commerce proceeds of the scheme to defraud for **MERRILL**'s use in partially funding **MERRILL**'s purchase of 1055 Spyglass Lane, Naples, Florida 34102.

6. It was a part of the money laundering conspiracy that on or about January 26, 2018, **LEDFORD** transferred $1.3 million in interstate commerce from DeVille Asset Management Limited's account ending in ***2485, at Bank of America, Colleyville, Texas to **MERRILL**'s Rhino Capital Holdings, LLC's account ending in ***2822 at PNC Bank, Lutherville, Maryland.

7. It was a part of the money laundering conspiracy that on or about January 31, 2018, **LEDFORD** transferred $3 million in interstate commerce from Riverwalk Financial Corporation's account ending in ***8958 account at Bank of America, Colleyville, Texas to **MERRILL**'s Rhino Capital Holdings, LLC's account ending in ***2822 at PNC Bank, Lutherville, Maryland.

8. It was a part of the money laundering conspiracy that on or about February 20, 2018, **MERRILL** transferred $2,506,794.49 in interstate commerce from **MERRILL**'s Rhino Capital

Holdings, LLC's account ending in \*\*\*2822, at PNC Bank, Lutherville, Maryland to account ending in \*\*\*4701 at Finemark National Bank & Trust, Fort Myers, Florida for the purchase of 1055 Spyglass Lane, Naples, FL, 34102.

9. It was a part of the money laundering conspiracy that on or about February 21, 2018, **MERRILL** transferred $2 million in interstate commerce from **MERRILL**'s Rhino Capital Holdings, LLC's account ending in \*\*\*2822 at PNC Bank, Lutherville, Maryland to account ending in \*\*\*4701 at Finemark National Bank & Trust, Fort Myers, Florida for the purchase of 1055 Spyglass Lane, Naples, FL, 34102.

18 U.S.C. § 1956(h)

## COUNTS ELEVEN - FOURTEEN

### Financial Transactions in Excess of $10,000 in Fraud Proceeds

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count Ten, Paragraphs 2-9 are incorporated by reference.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants

### KEVIN B. MERRILL and
### JAY B. LEDFORD

did knowingly engage in a monetary transaction in criminally derived property having a value greater than $10,000 and which was derived from specified unlawful activity, that is a wire fraud conspiracy and wire fraud in violation of 18 U.S.C. § 1349 and § 1343, as described in Counts One - Eight of this Indictment,  in that **MERRILL** and **LEDFORD** did withdraw and transfer the sums set forth below through the bank accounts described below for the acquisition of 1055 Spyglass Lane, Naples, Florida 34102, which affected interstate commerce:

| Count | Date | Sending Bank & Account Name & No. | Amount of Transaction | Receiving Bank & Account No. |
|-------|------|-----------------------------------|----------------------|------------------------------|
| Eleven | 1/26/18 | **LEDFORD**'s DeVille Asset Management Ltd's Bank of America account ending in ***2485, Colleyville, TX | $1.3 million | **MERRILL**'s Rhino Capital Holdings, LLC account ending in ***2822 at PNC Bank, Lutherville, MD |
| Twelve | 1/31/18 | **LEDFORD**'s Riverwalk Financial Corporation's account ending in ***8958 at Bank of America, Colleyville, TX | $3 million | **MERRILL**'s Rhino Capital Holdings, LLC account ending ***2822 at PNC Bank, Lutherville, MD |

| Count | Date | Sending Bank & Account Name & No. | Amount of Transaction | Receiving Bank & Account No. |
|---|---|---|---|---|
| Thirteen | 2/20/18 | **MERRILL**'s Rhino Capital Holdings, LLC's account ending in ***2822 at PNC Bank, Lutherville, MD | $2,506,794.49 | Account ending in ***4701 at Finemark National Bank & Trust, Fort Myers, Florida |
| Fourteen | 2/21/18 | **MERRILL**'s Rhino Capital Holdings, LLC's account ending in ***2822 at PNC Bank, Lutherville, MD | $2 million | Account ending in 4701 at Finemark National Bank & Trust, Fort Myers, Florida |

18 U.S.C.  § 1957; 18 U.S.C. § 2

### WIRE FRAUD FORFEITURE

The Grand Jury further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is given to the defendant **KEVIN B.**

**MERRILL**, that upon conviction of offenses in violation of 18 U.S.C. §§ 1349 and 1343 as alleged

in Counts One - Eight, the United States will seek forfeiture as part of any sentence of all property,

real and personal, which constitutes and is derived from proceeds that the defendant obtained

directly and indirectly from the offense, including, but not limited to, the following:

(a) a sum of money equal to the value of the proceeds of the offense retained by

**MERRILL**, which amount is at least **$39 million**;

2.      As a result of the offenses set forth in Counts One - Eight, the defendant,

### KEVIN B. MERRILL

shall forfeit to the United States all property, real or personal, which constitutes or is derived

from proceeds traceable to the conspiracy to commit wire fraud and the wire fraud offenses,

including but not limited to, the following:

a. Real Property:

1. 1848 Circle Road, Towson, MD 21204;

2. 1055 Spyglass Lane, Naples, FL 34102;

3. 27776 Sharp Road, Easton, MD 21601;

4. 531 Hampton Lane, Towson, MD 21204;

5. 3018 Susanne Court, Owings Mills, MD 21117; and

6. 1718 Greenspring Valley Road, Stevenson, MD 21153;

b. Automobiles/Motorcycles:

1. 2014 Ford Explorer, VIN 1FM5K8GT7EGA78090, titled to Amanda Marie Schlissler (Also Known As Amanda Merrill, Wife Of Kevin Merrill) in Maryland, License Plate Number 5BK0031

2. 2014 Lamborghini Aventador Roadster, VIN ZHWUR1ZD4ELA02398, titled to Rhino Capital Holdings LLC In Montana, License Plate Number 7SEVN7

3. 2014 Mercedes-Benz S63, VIN WDDUG7JB1EA061984, titled to Rhino Capital Holdings LLC In Montana, License Plate Number 739152B

4. 2015 BMW S1000R Motorcycle, VIN WB10D210XFZ352440, titled to Kevin Bryan Merrill in Maryland

5. 2015 Harley-Davidson VRSCDX Night Rod Special Edition Motorcycle, VIN 1HD1HHH18FC805081, titled to Kevin Bryan Merrill in Maryland

6. 2016 Ferrari 488 Coupe, VIN ZFF79ALAXG0214388, historically titled to Rhino Capital Holdings, LLC in Montana

7. 2017 Audi R8 5.2 Plus Coupe, VIN WUAKBAFX1H7902028, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BST385

8. 2017 Lamborghini Huracan Convertible, VIN ZHWUR2ZF1HLA07683, historically titled to Rhino Capital Holdings, LLC In Montana

9. 2017 Land Range Rover, VIN SALGS5FE7HA341466, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BWC041

10. 2017 Land Range Rover Sport, VIN SALWZ2FE6HA145282, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BYS857

11. 2017 Porsche 911 Turbo S, VIN WP0AD2A96HS167075, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BST540

12. 2017 Rolls Royce Dawn Convertible, VIN SCA666D57HU107107, titled to Rhino Capital Holdings LLC in Montana, License Plate Number CAV701

13. 2017 Rolls Royce Wraith Coupe, VIN SCA665C58HUX86607, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BWC226

14. 2018 McLaren 720S Coupe, VIN SBM14DCA9JW001142, titled to Rhino Capital Holdings LLC in Montana, License Plate Number CAV699

15. 2008 Bugatti Veyron, VIN VF9SA25C78M795164, titled to Rhino Capital Holdings LLC in Montana in 2018, License Plate Number CAV700

16. 2013 Ferrari California Convertible, VIN ZFF65TJA7D0195090, titled to Rhino Capital Holdings LLC in Montana, License Plate Number 711582B

17. 2014 BMW M6 Gran Coupe, VIN WBS6C9C51EDV73690, titled to Rhino Capital Holdings LLC in Montana, License Plate Number 724257B

18. 2014 Ferrari F12 Berlinetta, VIN ZFF674UFA2E0199037, titled to Rhino Capital Holdings LLC in Montana

19. 2014 Pagani Huayra, VIN ZA9H11RAYYSF76034, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BZZ743

20. 2015 Mercedes Benz S63, VIN WDDXJ7JB8FA000972, titled to Rhino Capital Holdings LLC in Montana, License Plate Number 711582B

21. 2015 Mercedes Benz S63, VIN WDDXJ7JB6FA001781, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BMV416

22. 2017 Cadillac Escalade ESV, VIN 1GYS4JKJ7HR194939, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BWC034

23. 2017 Lamborghini Aventador, VIN ZHWUT3ZDXHLA05923, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BSC624

24. 2018 Ferrari 488 Spider, VIN ZFF80AMA4J0228310, titled to Rhino Capital Holdings LLC in Montana, License Plate Number BZZ746

25. 2018 Lamborghini Huracan, VIN ZHWUS4ZF6JLA10746, titled to Rhino Capital Holdings LLC in Montana, License Plate Number CEY700

c. Boat

1. 2018 Formula 350 Crossover Bowrider Sportcruiser, Hull Number (HIN) TNRD1491C818, bearing registration number FL4747RP, titled in Florida to **Kevin B. Merrill**

d. Miscellaneous

1. Cash Surrender Value of Guardian Policy Number 6921245 held in the name of **KEVIN MERRILL;**

2. **KEVIN B. MERRILL's** interest in the Gulfstream Aircraft G200, Serial Number: 152, Registration Number: N52AJ, Engines: Pratt & Whitney Canada Model PW306A, Serial Numbers: PCE-CC0246 and PCE-CC0373 with others held through Rhino Capital Holdings;

3. A Platinum and Diamond Ring bought from and appraised by Dominion Jewelers: Center stone consists of one radiant cut diamond weighing 5.10 cts, certified by GIA report #2155084402 and side stones consist of 14 square radiant diamonds weighing 4.20 cts total set into a platinum ladies engagement ring.

4. Seven (7) Richard Mille Watches all appraised by Dominion Jewelers in July & August 2017.

3.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is given to the defendant **JAY B. LEDFORD**, that upon conviction of offenses in violation of 18 U.S.C. §§ 1349 and 1343 as alleged in Counts One - Eight, the United States will seek forfeiture as part of any sentence of all property, real and personal, which constitutes and is derived from proceeds that the defendant obtained directly and indirectly from the offenses, including, but not limited to, the following:

(a) a sum of money equal to the value of the proceeds of the offense retained by **LEDFORD**, which amount is at least **$34.6 million**;

4.      As a result of the offenses set forth in Counts One - Eight, the defendant,

### JAY B. LEDFORD

shall forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to commit wire fraud and the wire fraud offenses, including but not limited to, the following:

a. Real Property:

1. 9017 Grove Crest Lane, Las Vegas, NV 89134;

2. 1132 Glade Road, Colleyville, TX 76034;

3. 1650 Cedar Hill Dallas, TX 75208;

b. Cars:

1. 2016 Ferrari 488, VIN ZFF79ALA3G0217973, registered to JBL Holdings, LLC in Montana, bearing license plate number 778209B

2. 2016 Tesla Model S, VIN 5YJSA1E49GF155262, registered to Lalaine Barretto Hughes in Nevada

    3. 2015 Bentley Flying Spur, VIN SCBET9ZA7FC042592, titled to Jay Brian Ledford in Texas, license plate number FSJ7942

c. <u>Miscellaneous</u>:

    1. A Platinum and Diamond Three Stone Ring purchased from, and appraised by Eiseman Jewels, Dallas, Texas in December 2016; the ring is centered by a 7.32 carat emerald cut diamond with two tapered baguette cut diamonds, one on each side, which have a combined weight of 0.51 carats.

    2. A Platinum and Diamond Line Bracelet purchased from and appraised by Eiseman Jewels on December 26, 2016. A Platinum and Diamond Line Bracelet set with forty seven emerald cut diamonds that have a combined total weight of 23.26 carats.

    3. A Breitling for Bentley, Bentley B06S watch, Serial Number: 4311996.

    5. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property.

28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7); 18 U.S.C. § 1961(1); 21 U.S.C. §853(p)

*Robert K. Hur* /s/filmed
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

9.11.18
Date